## STATE OF VERMONT

## ENVIRONMENTAL COURT

In re: Appeal of Independent  }
Wireless One Leased Realty  }
Corp.  }    Docket No. 16-1-02 Vtec
}
}

Decision and Order

Appellant-Applicant Independent Wireless One Leased Realty Corporation appealed from a decision of the Development Review Board (DRB) of the Town of Hartford, denying its application for conditional use approval for the installation of wireless communications equipment on an existing windmill structure on the property of Samsonow. Appellant is represented by Craig Weatherly, Esq., Robert F. O' Neill, Esq. and Andrew D. Manitsky, Esq.; Neighbors Scott Rathburn, Elizabeth Rathburn, Walter Radiconi, Gina Radiconi, Eileen Corcoran-Howard, Christopher Araujo, Deborah Araujo, Thomas Longfellow, Barbara Kelly, Paul Cameron, June Cameron, Erwin Clifford and Shirley Clifford are represented by Gerald R. Tarrant, Esq.; and the Town of Hartford is represented by Kimberlee Sturtevant, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Charles and Susan Samsonow own property formerly owned by Craig Sanborn on Liberty Lane in the Town of Hartford in the Rural Lands-5 (RL-5) zoning district, the most rural of the Town' s zoning districts. The property contains a residence and garage, and a 100-foot-tall metal tower supporting a windmill blade assembly. The windmill was constructed in approximately 1984 under authority of a height variance issued by operation of law in 1983. A windmill is a facility that makes use of a renewable energy resource.

Under the zoning regulations in effect when the present application was filed, the Town' s zoning regulations did not specifically provide for wireless communications services as a permitted or a conditional use in any zoning district in the Town. Those zoning regulations did provide for conditional use approval of structures exceeding the 40-foot height limit (§ 3-2.1), with the additional standards that the height not be disruptive to [the structure' s] surroundings or create a hazard. The Town has since adopted a new telecommunications bylaw providing and regulating facilities for the provision of personal wireless services. Appellant has not chosen to apply for its project under the new bylaw; but rather pursued its application for approval of its proposal as a conditional use under the old bylaws. It is that application alone which is before the Court in the present proceeding[1].

The neighborhood in the vicinity of the Samsonow property is a residential community consisting of approximately twenty single-family residences of various architectural styles, some

with various residential and agricultural outbuildings and fencing. The area is located on a hillside facing to the northeast, with vistas overlooking the White River valley, including Interstate 89 and Route 14. It is a rural setting, featuring hills above the residences leading over a ridge to the Appalachian trail to the north, with meadows and forested areas leading down towards the river. The existing windmill is a dominant visual feature of the neighborhood, located on a knoll above and to the north and west of the majority[2] of the homes. It is visible from the Interstate, especially to southbound vehicles. It is visible from a portion of the Appalachian trail. It draws the eye within the landscape. With the windmill blade assembly, it fits within the character of a rural area. Like a silo or a church steeple, it is compatible with the appearance of an agricultural and residential landscape, even though it is a dominant feature of that landscape. Without the windmill blade assembly, it would have the appearance of a utility tower, more or less obtrusive depending upon what antenna assemblies or wires it would be supporting. Without the windmill blade assembly, it would 'read' to the viewer as a commercial 'cell phone' or other broadcasting type of tower rather than as an agricultural or 'clean energy' rural residential use.

The present application is has been made unnecessarily complicated by the existence of another pending application regarding the same tower. That application, by Devon Mobile Communications, is the subject of the two Appeals of Rathburn, et al., Docket Nos. 130-8-01 Vtec and 149-9-01 Vtec, which have been put on hold by operation of a bankruptcy stay that took effect in August 2002. At the time that Appellant's present application was submitted to the Town, Appellant took into account and showed on its plans the Devon proposal to remove the windmill blade assembly and to put up a panel antenna array at the top of the tower, and showed the location of the proposed Devon road, gate, equipment enclosure, fencing and landscaping. However, nothing of the Devon proposal is before the Court in the present case. Moreover, Appellant's proposal does not depend on anything of the Devon proposal's being approved or constructed.

The removal of the windmill blade assembly was required by the Devon proposal to use the very top of the tower for its panel antenna array. Appellant continues to propose to remove the windmill blade assembly. However, the such removal is not necessary to the installation of Appellant's proposal. The only structural analysis done for the tower assumed the removal of the windmill blade assembly and anemometer and associated cables, and the installation of both the Devon proposal and Appellant's proposal.

Appellant proposes to install a single panel-type wireless communications antenna on the northernmost leg of the tower, centered at a height of 85 feet, and a small GPS (global positioning system) antenna at a height of 50 feet on the same tower leg (tower leg B). The wireless communications antenna panel measures 66.2 inches (5½ feet) in length by 8.5 inches in width by 2.7 inches in thickness, is oriented along the tower leg, and is proposed to be attached to the northernmost leg of the tower with a mechanical down-tilt bracket (allowing it to be oriented somewhat more vertically than the slope of the tower leg).

The radio equipment and backup battery equipment to serve the antenna is proposed to be placed in two adjacent cabinets attached to a so-called floor stand mounted on a 9' x 12' concrete pad to be constructed approximately 28 feet northeast of the existing tower. The site plan shows five

existing apple trees, all " to be removed by others," referring to the Devon proposal. Without the Devon proposal, the Court finds no reason that the southerly two apple trees cannot remain in place, even though the northerly three apple trees would have to be removed by Appellant to construct Appellant's proposal.

The panel antenna on the tower is proposed to be connected to and from the radio equipment by two runs of 1¼ " coaxial cable, with an additional ½ " coaxial cable connecting the GPS antenna to the radio equipment. The three cables are proposed to be supported on the tower by a so-called cable ladder shown on the detail sheet CZ-3 of Exhibit 7b and shown on the site detail plan on sheet CZ-2, but not shown on the tower elevation on sheet CZ-2. The detail sheet shows a cable ladder that is approximately 18" wide and capable of supporting many more than the three cables proposed for Appellant's installation. Based on the description found on page 3 of Exhibits 209 and 6b, the structural analysis reports for the tower, Appellant's cable ladder was proposed to run up the opposite face of the tower (tower face A-C), although the cable ladder is shown on sheet CZ-2 as located next to and to the north of tower leg B, on tower face A-B. Also as derived from page 3 of Exhibits 209 and 6b, it appears that the windmill is served by a 1⅛ " cable and the anemometer is served by a ¼ " cable, both running along the northernmost leg of the tower (tower leg B). Without the Devon proposal, the Court finds no reason that the cables to serve Appellant's panel and GPS antenna cannot run on a much narrower cable ladder either aligned with and very near tower leg B, or attached to tower leg B itself.

The cables are proposed to traverse the 28 feet from the equipment cabinet to tower leg B on a cable bridge, suspended under a two-foot-wide expanded metal tray running ten feet above the ground, supported on posts. The equipment elevation detail on sheet CZ-4 of Exhibit 7b does not reflect the slope of the ground between the equipment pad and the tower leg. The ten-foot elevation is the standard for security reasons, but there is no technical reason why it could not be installed at a lower elevation or even at ground level, if it were suitably protected from damage. There is no technical reason why the cable bridge could not be narrower than two feet in width.

The combined radio equipment and backup battery cabinet will occupy a space approximately 2' x 2.5' and approximately five feet in height, roughly in the center of the 9' x 12' concrete pad. The electric and telephone utility supply to the cabinet will run underground from the utility poles to a standard electric breaker panel and meter and telephone panel mounted on a 4" square post approximately six feet in height located to the north of the concrete pad, from which it will run underground again to the cabinet. The 9' x 12' concrete pad is located within a 15' x 20' fenced enclosure, which is proposed to be enclosed by an eight-foot-tall wood[3] stockade fence with an eight[4]-foot-wide gate. The fence height was proposed at eight feet only to match the Devon proposal; only a seven-foot-high fence appears to be otherwise specified in the "fencing notes" detail on page CZ-3 of Exhibit 7b. Without the Devon proposal, the Court finds no reason that a seven-foot-high fence could not be used to restrict access to the 15' x 20' fenced enclosure.

No additional roadway is proposed by Appellant, and after construction, the facility should generate approximately one trip per month to the facility for regular maintenance. Any area disturbed by construction vehicles will be reseeded and returned to its existing condition. Appellant's vehicles will park in the existing Samsonow driveway and Appellant's maintenance personnel will walk in to the site.

A row of eight arborvitae trees are proposed to be planted easterly of the fenced enclosure, three feet on center but eight feet from the fence. This distance was set to allow an access right of way to the area proposed for the Devon equipment, and to link up with a longer line of arborvitae trees proposed by Devon. Without the Devon proposal, the Court finds that planting a line of ten shrubs closer to the easterly fence line and in two staggered rows would more successfully screen the easterly fence within the view of the area from the neighboring properties and would link that line of trees with the remaining apple trees to the south. Without the Devon proposal, the two remaining apple trees will screen the southerly fence within the view of the fenced area from the neighboring properties.

The equipment within the fenced enclosure is unobtrusive, not massive, and well within the scale of small outbuildings or equipment (such as propane tanks) found on residential and small agricultural properties. If the cable bridge support heights were reduced to a height below that of the fence and followed the contour of the slope to the tower leg, they would also be reasonably unobtrusive. The equipment and the cable bridge would not adversely affect the character of the area, even if they were visible, that is, even if the fence did not screen them from view.

A seven-foot-high wood stockade fence enclosing a fifteen by twenty foot area is not an excessively large or massive fence in a rural residential area of this type. It is not an unreasonably sized enclosure for animals or an enclosed garden space, or to enclose and screen from view farm equipment or vehicles being restored or worked on by the homeowner. When seen from across the valley or from the neighboring properties, the fenced area should blend in with the character of the area and be unobtrusive within the viewshed, assuming it is painted a color to blend in to the landscape.

With the conditions required below, and specifically not in conjunction with any other proposal for the same structure, Appellant's proposal will not adversely affect the character of the area and not be disruptive of its surroundings. It will maintain the open space character and rural residential and agricultural character of the area and of the property, and therefore will not adversely affect the objectives of the RL-5 zoning district. With the windmill blade assembly remaining on the structure, Appellant's panel antenna and its associated equipment will be relatively unobtrusive and will not 'read' to the viewer as a commercial use. With the windmill blade assembly remaining on the structure, the project will not adversely affect the property's ability[5] to utilize the renewable wind energy resource. It will not create a hazard, if condition 1, below, is satisfactorily completed. It will not adversely affect the capacity of existing or planned community facilities; to the extent that wireless telephone communications are enhanced as a result of the project it may positively affect the provision of emergency services. It will not adversely affect the capacity of roads and highways in the vicinity, even the small roadways leading to Liberty Lane and Liberty Lane itself, as only one round trip per month is anticipated to be generated by the project once it is constructed. It will not adversely affect any other bylaws in effect, including the later-adopted wireless communication facilities section of the zoning regulations.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's application is GRANTED as a conditional use permit, subject to the following conditions:

1. The windmill blade assembly and associated equipment[6] shall remain in place on the tower, in functional condition and capable of being maintained. However, we note that this decision is based in part upon evidence that the removal of the windmill blade assembly was proposed by Devon and was not necessary to Appellant's proposal, yet no technical report has been prepared analyzing the structural integrity of the tower in that configuration. Accordingly, prior to any site work for or construction of Appellant's proposal, Appellant shall prepare a revision of the Structural Analysis Report in evidence as Exhibit 209, reflecting Appellant's proposal without the Devon proposal and with the existing windmill blade assembly and associated equipment, and shall submit that revised report to the Town and the Neighbors, with a courtesy copy for the Court's file. Any adverse finding in such revised report may be submitted by any party as grounds for reopening this decision or taking additional evidence in this proceeding.

2. Appellant's proposed panel antenna, GPS antenna and associated structures shall be installed as proposed by Appellant, except as modified by this decision. We note that any future changes in the design, sizes or location of those components or structures would have to be submitted to the DRB as an application to amend the conditional use permit authorized by this decision, and would be subject to the review standards of the wireless communications facility bylaw found in Section 3-18 of the zoning bylaws.

3. The site plan shows five existing apple trees as being " removed by others." Because the removal of the southerly two of those five trees is not necessary for Appellant's proposed project, Appellant may remove only the northerly three apple trees; and shall leave the southerly two trees in place.

4. The so-called ' cable bridge' to conduct the cable from the equipment cabinet to the tower leg shall be constructed to follow the contour of the short slope from the cabinet location to the tower leg, and shall be located at a height of not more than seven feet from the surface of the ground, so that it can be effectively screened by the proposed fencing, landscaping, and existing apple trees. Without an application for permit amendment, Appellant may select the height of the cable bridge within that limitation or may choose whether to install the cable underground to the foot of the tower, or in a suitably protected channel along the surface of the ground. Also without an application for permit amendment, Appellant may elect to reduce the width of the cable bridge from the size shown on the application; however, the actual configuration, height and width of the cable installation and bridge intended to be installed shall be shown on the revised plans required by condition 6 below.

5. The wood stockade fence shall be seven feet in height, shall be of a color to harmonize naturally with the surrounding landscape and residential structures, and shall be screened on the easterly side with a staggered row of ten arborvitae, planted three feet[7] on center and with the nearest trees to the fence planted three feet from the fence. Appellant shall maintain the arborvitae and replace any that do not survive as soon as the planting season makes it possible.

6. This conditional use approval specifically does not authorize any of the items shown on the site plan as ' future' or ' to be constructed by others' or by ' Devon' Those items are the subject of another application and two other appeals, Appeals of Rathburn, et al., Docket Nos. 130-8-01 Vtec and 149-9-01 Vtec, which at the present time have been stayed due to the filing for

bankruptcy of Devon Mobile Communications. Accordingly, by or before January 6, 2003, Appellant shall prepare and file with the Town' s office of planning and zoning, with a copy for the Court' s files, a revised Exhibit 7b, consisting of the site plan and associated elevation and detail sheets, reflecting the conditions of this decision and eliminating the items on the site plan related only to the Devon application and any associated captions and plan legend entries, and eliminating from the detail sheets any standard features not actually being proposed in this application. Appellant shall provide copies of the proposed revised site plan and associated elevation and detail sheets to Attorneys Tarrant and Sturtevant on or before December 27, 2002 for their review and comment.

Dated at Barre, Vermont, this 16th day of December, 2002, at 8:00 a.m.

_____

Merideth Wright
Environmental Judge

### Footnotes

[1.] There is no basis for treating it as a permitted use in the district. Appellant applied for conditional use approval and the Town considered the application as a conditional use, as it is an change to a structure for which conditional use would have been required under §3-2.1. In order to cure any deficiency in its old bylaw under the federal Telecommunications Act of 1996; it was reasonable for the Town to avoid the preemption issue by allowing Appellant to apply as a conditional use, as is allowed under the new bylaw.

[2.] It is, however, at the elevation of and to the south of a home and small farm located over the knoll to the north. From that home, the upper portion of the tower is visible directly behind the knoll.

[3.] The "fencing notes" detail on page CZ-3 of Exhibit 7b also discusses wire (chain link) fencing topped with barbed wire. As these fence features were not otherwise proposed by Appellant or discussed in testimony, we must assume that they are standard notes from a stock detail sheet and that they are not actually being proposed in this instance. See condition 6 below.

[4.] The site plan shows a twelve-foot-wide gate, but Appellant's witness testified that the gate would be eight feet in width.

[5.] Nothing about this criterion requires the actual use of the renewable energy resource, merely refraining from impairing the potential for its use.

6. Appellant shall arrange for the existing anemometer to be relocated, if necessary, to a different elevation or a different leg on the tower, as necessary to allow it to function properly.

7. In the event that the Devon proposal were to be approved as proposed, these plantings would have to be located eight feet from the fence and would have to be proportionately much larger at planting. Accordingly, Appellant may delay the installation of these plantings until Docket Nos. 130-8-01 Vtec and 149-9-01 Vtec are resolved or until the second planting season after the decision in the present case becomes final, whichever occurs first.